John S. Worden, Nevada Bar # 7563
SCHIFF HARDIN LLP
One Market, Spear Street Tower
Thirty-Second Floor
San Francisco, CA  94105
Tel.: (415) 901-8700
Fax: (415) 901-8701
jworden@schiffhardin.com

Carlos Blumberg, Nevada Bar #7607
BLUMBERG LAW FIRM
10161 Park Run Drive, Suite #150
Las Vegas, Nevada, 89144
Tel.: (702) 388-0005
Fax: (702) 258-0002
BlumbergLaw@aol.com

Maxim H. Waldbaum, *pro hac vice application to follow*
Brian Neff, *pro hac vice application to follow*
Henry Mann, *pro hac vice application to follow*
SCHIFF HARDIN LLP
666 Fifth Avenue, 17th Floor
New York, NY 10103
Tel.:  (212) 753-5000
Fax:  (212) 753-5044
mwaldbaum@schiffhardin.com
bneff@schiffhardin.com
hmann@schiffhardin.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| NEWSTAR CHEMICALS (M) SDN BHD., a Malaysian private limited company, NEWSTAR HOLDINGS PTE LTD., a Singaporean private limited company, and RANDALL HART,<br><br>               Plaintiffs,<br><br>   v.<br><br>MEGOLA, INC., a Nevada Corporation, and DOES 1 through 500,<br><br>          Defendants. | Case No. 2:11-CV-926-GMN-(RJJ)<br><br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs Newstar Chemicals (M) SDN BHD., a Malaysian private limited company, Newstar Holdings PTE LTD., a Singaporean private limited company, and Randall Hart respectfully submit this Motion for an order, pursuant to Rule 65 of the Federal Rules of Civil Procedure ("FRCP") preliminarily enjoining Defendant Megola, Inc. ("Megola") from: (1) using to the "Anti-Fire 21" or "AF21" marks in connection with the sale or marketing of Megola's products; and (2) asserting – in communications with Plaintiffs' customers, through press releases, or through any other means – that Megola is authorized to manufacture or distribute AF21.

## PRELIMINARY STATEMENT

Plaintiffs bring this Order to Show cause to enjoin a disgruntled former distributor from continuing to infringe upon Plaintiffs' trademark rights in a fire-inhibitor product known as AF21 (hereinafter "AF21" or "the Product").  Plaintiff Randall Hart invented AF21.  He and his companies marketed the product in the United States through distributors, while retaining all intellectual property rights associated with the Product. Defendant Megola was for a time an authorized manufacturer and distributor of AF21. However, Plaintiffs' agreement with Megola expired at the end of 2010.  Much to Megola's disappointment, in January 2011, Plaintiff granted the AF21 distribution rights to a former customer of Megola – EcoBlu Products, Inc. ("EcoBlu").

Despite the loss of its agency, Megola has continued to market itself as an authorized manufacturer and distributor of AF21.  Megola's website touts its ability to supply AF21.  Moreover, in a series of recent press releases, Megola has announced that it "will continue to manufacture AF21" and promised that if "you want our AF21 fire product, we will deliver it."  In an effort to give some credence to its claims of a continuing right to market AF21, Megola falsely announced to the industry that it had

purchased the intellectual property rights in AF21 from "1771601 Ontario, Inc." – a company Plaintiffs have never done any business with. Most recently, Megola has announced its intention to market AF21, or some altered version of it, under other trade names. Megola has refused to retract its false statements and it continues to present itself as an authorized distributor of AF21, when in fact, because Megola lacks the formula for AF21, any product it is offering to sell is a knock-off.

Megola's conduct is a bald-faced violation of Plaintiffs' trademark rights. The Lanham Act prohibits Megola's unauthorized use of Plaintiffs' marks and Megola's false claims that it is authorized to manufacture and market AF21. In egregious situations such as this, irreparable harm is presumed. In any event, Plaintiffs have presented evidence that Megola's conduct is causing substantial harm to Plaintiffs' business by fostering confusion in the industry regarding the rights to AF21.

Finally, the public interest especially favors an injunction. Plaintiffs' Product, which can be produced only by use of Plaintiffs' exclusive trade secrets, is a nontoxic fire-retardant. Plaintiffs have no information concerning the chemical properties of what Megola is passing off as the Product. This poses an exceptional danger to the purchasing public, who may be unwittingly purchasing a toxic substance that does not retard fire.

Whether motivated by a desperate desire to save a failing business, or simply a wish to exact revenge, Megola has demonstrated little inclination to curb its unlawful conduct. Injunctive relief should be granted to halt Megola's wrongdoing and prevent irreparable injury to Plaintiffs.

## PERSONAL JURISDICTION

This court has personal jurisdiction over Defendant.   Megola is a Nevada corporation, and may thus be sued in Nevada.

## STATEMENT OF FACTS[1]

Plaintiffs manufacture and market a number of fire-inhibitor products under the "Hartindo" trade name.  That name is a combination of Plaintiff Randall Hart's last name and the country of his citizenship: Indonesia.  (Declaration of Randall Hart ("Hart Decl.") ¶ 6).

In 1979, Mr. Hart invented a fire inhibitor (the "Product") identified and known according to the unique trade names "Anti-Fire 21," and "AF21" (collectively, the "AF21 Trademarks").  (Hart Decl. ¶ 6).  The AF21 Trademarks were commonly included on the labels for the Product, in the marketing materials, and on the company websites, hartindo.co.id (since at least 1994) and newstarchemicals.com (since at least 2005), which have included pictures of the Product bearing the AF21 Trademarks.  Through these marketing efforts, the Product became closely associated with the AF21 Trademarks.  (Hart Decl. ¶ 8).  Over the years, Mr. Hart and his companies, Plaintiffs Newstar Chemicals and Newstar Holdings, marketed the Product in a number of countries, including the United States since 2005.  (Hart Decl. ¶ 7).

On October 18, 2007, Mr. Hart entered into an agreement with Pacific Channel, Ltd. ("PCL"), a company owned by Joel Gardner (the Chief Executive Officer of Megola) and others, to distribute the Product in North America (the "Hart-PCL

---

[1] This section summarized the facts set forth in greater detail in the accompanying Declarations.

Agreement").   (Hart Decl. ¶ 9).   PCL, in turn, granted certain distribution rights to Megola.   On June 17, 2009, the Agreement was terminated due to lack of payment by PCL.   (Hart Decl. ¶ 11).   PCL was later dissolved.   Upon Mr. Gardner's request, Plaintiffs issued an interim letter of agency to allow Megola, another company controlled by Mr. Gardner, to continue selling Hartindo anti-fire products, including AF21.   (Hart Decl. ¶ 12).

In February 2010, Mr. Gardner informed Mr. Hart that he had filed an application for trademark registration of the "Hartindo Anti-Fire" trademark.   (Hart Decl. ¶ 13).   The filing was done without Mr. Hart's consent, and Mr. Hart demanded this trademark be transferred to Newstar Chemicals immediately.   (Hart Decl. ¶ 13).   Mr. Gardner confirmed that this trademark did indeed belong to Newstar Chemicals, and promised to transfer the trademark to Newstar Chemicals at the earliest opportunity.   (Hart Decl. ¶ 13).[2]

On April 9, 2010, the Board of Directors of PCL, which included Mr. Gardner, issued a notice indicating that the Board had issued a resolution dissolving the company, effective immediately.   (Hart Decl. ¶ 14; Ex. A).   The notice further stated that "all and any rights granted to either Megola Inc. and/or MSE EnviroTech Corp. relating to the Hartindo product line from Pacific Channel Limited shall be terminated upon dissolution of Pacific Channel Limited."   (*Id.*)

---

[2] Although the relief sought in Plaintiffs' Complaint includes a request for an order cancelling Megola's wrongful registration of the "Hartindo Anti-Fire" trademark, the instant application for a preliminary injunction focuses on a particular Hartindo product, AF21 – because Megola's infringement of Plaintiffs' AF21 Trademarks presents the greatest threat of immediate and irreparable harm.

On that same date, April 9, 2010, Newstar Chemicals executed a letter appointing Megola as the exclusive distributor of Hartindo Anti-Fire products, including the Product, in the United States and Canada (the "Newstar-Megola Agreement").  (Hart Decl. ¶ 15; Ex. B).  The Newstar-Megola Agreement explicitly stated that rights granted would continue only "until the end of year 2010."  (*Id.*)

On May 10, 2010, Megola sent a letter to several companies in the industry relating to these developments.  Megola's May 10 letter acknowledged that: (1) the dissolution of PCL terminated any rights of Megola with respect to Hartindo products; (2) Megola was hoping to acquire, but did not yet have, "the North American rights for the Hartindo line of Anti-Fire Products from Newstar Chemicals"; and (3) the Newstar-Megola Agreement only covered the period "until the end of 2010."  (Hart Decl. ¶ 16; Ex. C).  Megola then marketed and distributed the Product in the United States and Canada, pursuant to the Newstar-Megola Agreement, including to EcoBlu Products, Inc. ("EcoBlu").  (Hart Decl. ¶ 17).

By the end of 2010, Plaintiffs had not received evidence that Mr. Gardner or any company associated with him had transferred the "Hartindo Anti-Fire" trademark to Newstar Chemicals.  Accordingly, and in light of Megola's poor performance, Plaintiffs decided not to renew the Newstar-Megola Agreement.  (Hart Decl. ¶ 19).

In January 2011, Newstar Chemicals received a copy of a signed letter from Megola to the Canadian Intellectual Property Office, dated January 10, 2010 [sic, likely intended "2011"].  (Hart Decl. ¶ 26; Ex. D).  This letter confirmed that Megola filed the application for the "Hartindo Anti-Fire" trademark "on [Newstar Chemical's] behalf as their North American agent," and requested that this trademark be transferred to Newstar

Chemicals.  (*Id.*).  However, Plaintiffs have received no confirmation that the letter was actually mailed, nor any notice from the Canadian Trademark Office (or the United States Trademark Office) that the trademark registered by Megola has been actually transferred to Newstar Chemicals.  (*Id.*).

In February, 2011, Plaintiffs granted EcoBlu an exclusive manufacturer license to the Product in North America.  (Hart Decl. ¶ 21).  Currently, Megola is not authorized to act as either manufacturer or distributor of the Product.  (*Id.*).

Despite this, Megola was unable to accept the legitimate termination of the Newstar-Megola Agreement, and has become increasingly hostile and uncooperative since its expiration.  (Hart Decl. ¶ 22).  Megola has continued to wrongfully use the AF21 Trademarks at its website (while refusing to transfer the "Hartindo Anti-Fire" trademark), has continued to issue a series of false press releases claiming ownership of AF21 and the right to modify that Product, and has disrupted Plaintiffs' relationship with its customers.

With respect to the AF21 Trademarks, Megola has used those Trademarks, despite clearly lacking any right to do so.  (Hart Decl. ¶ 24).  For example, Megola's website identifies "AF21" and other Hartindo products as available for sale by Megola. (Hart Decl. ¶ 24, Ex. F).

Megola's conduct with regard to the "Hartindo Anti-Fire" trademark indicates that Megola is unwilling to respect Plaintiffs' trademark rights.  After having acknowledging in writing that Megola registered that trademark on behalf of Plaintiffs, and despite numerous requests to transfer the trademark to Plaintiffs, and numerous promises by Megola that it would be returned, it has never been returned, transferred or assigned to Plaintiffs.  (Hart Decl. ¶ 23).  Furthermore, in a March 14, 2011 email, Mr.

Gardner made it clear that he is trying to hold this trademark hostage in order to extract a new agreement from Plaintiffs.  (Hart Decl. ¶ 23; Ex. E).  Specifically, Mr. Gardner stated:

> Randall, as you can see TM is almost ready to transfer . . .
> the statement [o]f use is what Mullinex needed to finalize .
> . . megola will transfer over ownership to Newstar . . . I
> need help over here, must be something in writing you can
> send Megola regarding interim agency . . .

(*Id.* (ellipses in original).)).

Having failed to extract a license from Plaintiffs, Megola turned to releasing blatantly false, damaging misstatements concerning the Product, the AF21 Trademarks and Plaintiffs.  In an April 13, 2011 press release, Megola claimed that a Canadian company, "1771601 Ontario Inc.," purchased the recipe for the Product from Plaintiffs.  (Hart Decl. ¶ 26; Ex. G).  Five days later, on April 18, 2011, Megola issued another press release (1) repeating many of the same claims, (2) claiming they signed a Memorandum of Understanding with 1771601 Ontario Inc. "for the Purchase of the Intellectual Properties to the Hartindo AF21 Anti-fire Inhibitor product," and (3) asserting that "Megola currently owns the North American trademarks for 'Hartindo Anti-Fire' and 'Ant-Fire'[sic]."  (Hart Decl. ¶ 27; Ex. H).  These assertions are patently false, and Plaintiffs have never sold or disclosed the formula for the Product to Megola or "1771601 Ontario Inc."  (Hart Decl. ¶ 26).

Megola refuses to cease issuing false press releases and to retract its false statements.  (Hart Decl. ¶ 28; Declaration of Maxim H. Waldbaum, Esq. ("Waldbaum Decl.") ¶¶ 2-6).  In fact, it continues to issue press releases with false and damaging information, including that Megola now has acquired the intellectual property rights to the Product, and that Megola would now be modifying the Product to "allow Megola the

potential of initiating patents for the different blends." (Hart Decl. ¶ 29; Ex. I).  Further, Megola is now contacting Plaintiffs' customers directly to make additional false and disparaging statements, and Plaintiffs have begun to receive complaints about Megola's behavior.  (Hart Decl. ¶ 31).

Mr. Gardner's response to Plaintiffs' demands that Megola cease its wrongful conduct has been harass Mr. Hart with a steady stream of emails, gloating over the fact that he has forced Plaintiffs to incur legal fees to restrain Megola's wrongdoing, and threatening baseless legal action against Plaintiffs' customers.  (Hart Decl. ¶ 32).

Plaintiffs now file the present action to prevent Megola from causing further irreparable harm to Plaintiffs' business and intellectual property rights.

## ARGUMENT

It is well-established that a preliminary injunction should be issued under Rule 65 of the Federal Rules of Civil Procedure where a party can demonstrate: (1) serious questions going to the merits are raised; (2) the balance of hardships tips sharply towards the plaintiff; (3) likelihood of irreparable injury; and (4) that the injunction is in the public interest.[3]  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in

---

[3] Additionally, Rule 65(c) discusses a security requirement "in an amount that the court considers proper."  The Ninth Circuit has found this requirement to be discretionary upon the Court's judgment, and dependent upon a non-movant showing the need for such a bond.  *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ("[w]e do not, however, believe that the language of Rule 65(c) absolves the party affected by the injunction from its obligation of presenting evidence that a bond is needed," and thus, the district court did not abuse its discretion by not reaching the bond issue.).

the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008).  Here, analysis of these factors urges the granting of injunctive relief.

## I.     PLAINTIFFS HAVE ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs can establish a clear likelihood of success on their claims that Megola is in violation of the Lanham Act.  Section 43(a) of the Lanham Act provides that:

> Any person who, on or in connection with any goods . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods . . . by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods . . .,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

In this case, Megola is in violation of both subparagraphs (A) and (B).

## A.     15 U.S.C. § 1125(a)(1)(A) – False Designation of Origin and False Description

Megola has made false designations of origin in violation of 15 U.S.C. § 1125(a)(1)(A), which protects against false designation of origin and false description or representation, whether or not a registered trademark is involved. *Brookfield Communications, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.6 & n.8 (9th Cir. 1999) ("...[S]ection 43(a) [of the Lanham Act, codified as 15 U.S.C. § 1125(a)] protects against infringement of unregistered marks and trade dress as well as registered marks").

To prevail on a claim of trademark infringement under the Lanham Act, the plaintiff must show, "(1) it has a valid, protectable trademark, and (2) that [defendant's] use of the mark is likely to cause confusion." *Applied Information Sciences Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).

### 1.    Plaintiffs' AF21 Trademarks Merit Protection.

In order to show that the mark merits protection, the plaintiff must establish ownership of, or a first use of, the mark in question. *Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).  "The standard test of ownership in trademark law is priority of use." *Airs Fragrance Prods., Inc. v. Clover Gifts, Inc.*, 395 Fed. Appx. 482, 485 (9th Cir. 2010) (unpublished); *Sengoku Works Ltd.*, 96 F.3d at 1219.  A claim under Section 43(a) does not require proof of a federally registered trademark.  *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1198 (9th Cir. 1979).  The "dispositive question" is whether the party has "a reasonable interest to be protected against false advertising." *Id.*

Here, Newstar's AF21 Trademarks merit protection because Newstar is the rightful owner of the marks.  Mr. Hart invented AF21.  (Hart Decl. ¶ 6).  He subsequently marketed AF21 in the United States through a Malaysian company in 2005, and later PCL.  (Hart Decl. ¶¶ 7-9).  However, the agreement with PCL was terminated due to non-payment by PCL, and PCL subsequently dissolved.  (Hart Decl. ¶ 11).  As Megola acknowledged, any rights or licenses granted to Megola by PCL with respect to Hartindo products terminated with the dissolution of PCL.  (Hart Decl. ¶¶ 15-16; Exs. B & C).  The Newstar-Megola Agreement did not purport to transfer any trademark rights to Megola, and that agreement expired at the end of 2010.  (Hart Decl. ¶¶ 15, 19; Ex. B).

Since that time, Plaintiffs have marketed AF21 through other distributors. (Hart Decl. ¶ 21). Thus, Plaintiffs are the rightful owners of the AF21 Trademarks, and certainly possess a superior right to such marks as against Megola. *See Sengoku Works Ltd.*, 96 F.3d at 1221 (upholding jury instruction that stated, "Between a foreign manufacturer and its exclusive distributor, the law presumes that the foreign manufacturer is the owner or [sic] the trademark and/or trade dress unless there is an agreement to the contrary" (internal citations omitted)).

### 2.   Megola's Use of Plaintiffs' AF21 Trademarks has Caused Confusion.

Consumer confusion is inevitable where two marks are identical and used for the same product. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 796 F.2d 254, 257 (9th Cir. 1986) (finding an "overwhelming likelihood of confusion result[s] from the direct competition of pens with virtually identical marks"); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) (where marks are virtually identical and services are identical, there is a likelihood of confusion even without evidence of actual confusion, a weak mark, and no intent to capitalize). In addition, courts have come to accept confusion as to sponsorship, endorsement, or some other affiliation as satisfying the requirement. *See*, *e.g.*, *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204-05 (2d Cir. 1979); *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *Professional Golfers Association v. Bankers Life & Casualty Co.*, 514 F.2d 665, 670 (5th Cir. 1975).

Here, consumer confusion is inevitable because Megola is using marks identical

to those owned by Plaintiffs.  In their press releases and on its website, Megola claims the right to manufacture and distribute "Hartindo AF21" and "AF21".  (Hart Decl. ¶¶ 24-30; Exs. F-J).  Such claims are directly at odds with Plaintiffs' trademark rights and, thus, will inevitably confuse purchasers with regard to who is authorized to manufacture or distribute the Product.

Based on the foregoing, Plaintiffs have shown a likelihood of success on the merits of their claim that Megola is in violation of 15 U.S.C. § 1125(a)(1)(A).

**B.**      **15 U.S.C. § 1125(a)(1)(B) – False Advertising**

Megola has also engaged in false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).  That provision requires a showing of "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce;[4] and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products."  *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997).  Plaintiffs have established each of these requirements.

---

[4] "Prior to the 1988 amendments to § 43(a), Pub.L. No. 100–667 § 132, 102 Stat. 3935, 3946, the interstate commerce requirement was associated with the defendant's falsely advertised goods or services. After the 1988 amendments, it is the statement itself, rather than the falsely advertised goods or services, that must be used in interstate commerce. Compare 15 U.S.C. § 1125 (1982) with 15 U.S.C. § 1125 (1988)." *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 n.3 (9th Cir. 1997).

1.     **Megola Has Made False Statements of Fact About Megola's and Plaintiffs' Product.**

Plaintiffs are likely to prevail on the merits of the false advertising claim because Megola's statements are "literally false."   Where a defendant "intentionally misled consumers or the advertisement is literally false, a presumption arises that consumers were in fact deceived and the burden shifts to the defendant to prove otherwise." *Del Webb Communities, Inc. v. Partington*, 08-cv-00571-RCJ-GWF, 2009 WL 3053709, at *13 (D. Nev. Sept. 18, 2009) (slip copy); *Fortunet, Inc. v. Gametech Arizona Corp.*, 06-CV-00393-PMP-PAL, 2008 WL 5083812, at *7 (D. Nev. Nov. 26, 2008) (unreported). In determining falsity, courts must view a statement in context in its entirety, and thus courts have held that "a claim can be literally false by necessary implication." *Southland Sod Farms*, 108 F.3d at 1139 (internal quotation omitted).

Here, it is clear that Megola's statements that it has entered into an agreement to purchase intellectual property relating to the AF21 formula and Trademarks are literally false, as the purported seller, "1771601 Ontario, Inc.," has no rights in such intellectual property to sell.  (Hart Decl. ¶ 26).  Megola is falsely asserting that they are authorized to manufacture and distribute AF21 – and to make "modifications" to AF21 with "the potential of initiating patents for the different blends."  (Hart Decl. ¶ 29; Ex. I).  Megola's role as a distributor for AF21 terminated at the end of 2010, and Plaintiffs certainly have not authorized Megola to create and market "modifications" or "blends" based on the AF21 formula, which remains a proprietary trade secret of Plaintiffs.  (Hart Decl. ¶ 26).

2.     **Megola's Statements have the Tendency to Deceive a Substantial Segment of their Audience**

For a statement to have a "tendency to deceive," it must be more than "mere 'puffery.'"  *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d

242, 245 (9th Cir. 1990).   Additionally, where a defendant "intentionally misled consumers or the advertisement is literally false, a presumption arises that consumers were in fact deceived and the burden shifts to the defendant to prove otherwise." *Del Webb Communities, Inc.,* 2009 WL 3053709, at *13; *Fortunet, Inc*, 2008 WL 5083812, at *7.

Here, Megola's statements have a tendency to deceive a substantial segment of their audience. *Southland Sod Farms*, 108 F.3d at 1139.  Megola's website asserts that Megola is authorized to distribute AF21, without giving any indication that Megola has been terminated as Plaintiffs' agent. (Hart Decl. ¶ 24; Ex. F).  Similarly, Megola has been broadcasting false press releases to the entirety of the internet, and through trade publications.  And finally, Megola has begun to contact Plaintiffs' customers directly to make additional false and disparaging statements. (Hart Decl. ¶ 31).  Such statements far exceed "mere 'puffery.'"  *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 245.  They are false statements going to the heart of Plaintiffs' and Megola's products, and tend to deceive customers that Megola is an authorized dealer, and that Megola is selling authorized and genuine AF21. *See Wolf Creek Golf Club Paradise Canyon, LLC v. Integra Investments, LLC*, 207-CV-1701-RLH-GWF, 2008 WL 746919, at *3 (D. Nev. Mar. 18, 2008) (finding that advertising had a tendency to deceive when it led customers to believe what it purported).  In sum, the statements clearly have the tendency to deceive a substantial portion of their audience.

### 3.    Megola's Deception is Material, and Likely to Influence the Purchasing Decision

As described in *Southland Sod Farms,* a statement is material if it is "likely to influence the purchasing decision." *Southland Sod Farms*, 108 F.3d at 1139.   Megola's

deception is material and extremely likely to influence purchasing decisions of potential buyers of AF21.  This is because Megola claims not only rights to sell AF21 – a fact alone which would be sufficient to influence a purchasing decision by the buying public seeking AF21 products – but Megola claims to have acquired the formula to AF21 and, thus, the technical knowledge required to produce modifications to the Product.

Further, the deception is having a material effect and is likely influencing purchasing decisions of AF-21 buyers.  Plaintiffs are now receiving complaints about Megola's behavior (Hart Decl. ¶ 31), strongly indicating that customers' purchasing decisions are now being influenced by Megola's statements.

### 4.     Megola Caused its False Statement to Enter Interstate Commerce

Megola has a public website which is asserting that "Megola Inc. has created distribution networks throughout the world to integrate our products into wide scale usage," and the site further states that Megola "acquired the North American supplier, the exclusive Canadian distribution and the co-exclusive USA distribution rights for the Hartindo™ line of Anti-Fire Products." (Hart Decl. Ex. F).  Moreover, Defendant's press releases are widely available on the internet and have been distributed through trade publications.   Such uses satisfy the "use in commerce" requirement under § 1125(a)(1)(B).  *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1049 (9th Cir. 1999) (mere domain name may be a use in commerce); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 832 (N.D. Ill. 2000) (finding requirement satisfied based upon fact that "Plaintiff's mark permeates [defendant's] entire website").  S*ee also*, *U.S. v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir.

2007) ("the Internet is an instrumentality and channel of interstate commerce" (collecting circuit cases) (citations omitted)).

> **5.      Plaintiff Has Been or is Likely to be Injured as a Result of the Foregoing Either by Direct Diversion of Sales from Itself to Megola, or by Lessening of Goodwill Which its Products Enjoy with the Buying Public.**

The Lanham Act requires only proof providing "a reasonable basis for [the] belief that the plaintiff is likely to be damaged as a result of the false advertising."  See *In re Century 21-RE/MAX Real Estate Adver. Claims Litig.*, 882 F. Supp. 915, 924 (C.D. Cal. 1994) (citing *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 316 (2d Cir. 1982)).  Here, it is certainly reasonable for Plaintiffs to believe that false statements to the industry by a former distributor claiming that it has purchased the intellectual property rights of Plaintiffs' product, and claiming that they now intend to market modifications of that product, are likely to cause substantial damage.  Moreover, Megola is marketing AF21 in direct competition with Plaintiffs' authorized distributor, EcoBlu.

> **6.      Megola's False Statements were made in the Context of Commercial Advertising and  Promotion**

Although the false advertising elements in most Ninth Circuit opinions do not cite this element, the Lanham Act requires that statements be made in the context of "commercial advertising and promotion."   15 U.S.C.  §  1125(a)(1)(B).   The term "commercial advertising or promotion" is not defined in the Lanham Act, courts have adopted a four part test to determine whether representations qualify: the contested representations must be "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff;  (3)  for the purpose of influencing consumers to buy defendant's goods or services"; and, (4) although representations less formal than those made as part of a classic advertising campaign may suffice, the representations "must be

disseminated sufficiently to the relevant purchasing public...." *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999). Statements made on company websites and in press releases have been held to constitute commercial advertising or promotion. *CertainTeed Corp. v. Seattle Roof Brokers*, C 09-563 RAJ, 2010 WL 2640083 (W.D. Wash. June 28, 2010) (granting injunction under Lanham Act against defendant who made false statements on website); *Healthport Corp. v. Tanita Corp. of Am.,* 563 F. Supp. 2d 1169, 1180 (D. Or. 2008) (holding that statements made on website were advertisements placed into interstate commerce); *Trafficschool.com, Inc. v. Edriver, Inc.,* 633 F. Supp. 2d 1063, 1074 (C.D. Cal. 2008) (same); *Star-Brite Distrib., Inc. v. Kop-Coat, Inc.*, 09-60812-CIV, 2010 WL 750353, at *3 (S.D. Fla. Mar. 4, 2010) ("The Court concludes that the Star-Brite press release is actionable 'commercial advertising or promotion' within the context of 15 U.S.C. § 1125(a)(1)(B).")

Here, the Megola press releases and website clearly satisfy this test. First, the press releases and website are commercial in nature because they purportedly announce that Megola has proprietary rights to the Product and its trademarks. Second, Megola is in commercial competition with Newstar because Megola is passing off its own product using the AF21 Trademarks. Third, Megola is using the press releases and website as vehicles for influencing the marketplace, by giving them assurances that Megola has the proprietary technology necessary to manufacture the Product and has the right to sell products using the AF21 Trademarks. Fourth, the press releases and website are by nature targeted to the general public and available to viewing by anyone.

## II.     THE BALANCE OF HARDSHIPS SHARPLY TIPS IN PLAINTIFF'S FAVOR

The plaintiff "must suffer a degree of hardship that outweighs the hardship placed upon the defendants by the injunction." *Tile Outlet Always In Stock, Inc. v. Big Leaps, Inc.*, 3:10-CV-0618-LRH-VPC, 2010 WL 5239229, at *2 (D. Nev. Dec. 16, 2010) (citing *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993)). Further, "the balance of equities in an injunction inquiry favors the trademark owner where the defendants are allegedly infringing the plaintiff's registered trademarks." *Id.* at *3. Here, the balance of the hardships plainly favors Plaintiffs' position and the granting of injunctive relief. Unless injunctive relief is granted, Plaintiffs' reputation and standing in the industry will be significantly harmed in that Megola will be free to continue to make false claims regarding their purported right to manufacture and market AF21. Plaintiffs may further lose customer goodwill due to unwittingly purchasing Megola's falsely labeled and deceptive product. Further, as the trademark holder, the balance of hardships clearly favors Plaintiffs. *Id.*

In contrast, it is clear that Megola has no legitimate rights that will be harmed if the requested relief is granted. Megola has no legitimate right to use the AF21 Trademarks (or any other Hartindo mark) in association with the sale of their products. It has no legitimate right to trade on the goodwill inured to the benefit of Plaintiffs and earned through Plaintiffs' efforts.

## III.     PLAINTIFFS HAVE SHOWN IRREPARABLE HARM

The Ninth Circuit has held that "[o]nce the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue." *Rodeo Collection, Ltd. v. West*

*Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987).  *See also*, *e.g.*, *General Motors Corp. v. Let's Make A Deal*, 223 F. Supp. 2d 1183, 1196-97 (9th Cir. 2002) (same); *Apple Computer, Inc. v. Formula Intern. Inc.*, 725 F.2d 521, 525 (9th Cir. 1984) (same); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999).   Accordingly, courts have recognized that facially false designations of origin and association warrant injunctive relief.  See, e.g., *California Cedar Products Co. v. Pine Mountain Corp.*, 724 F.2d 827 (9th Cir. 1984) (upholding preliminary injunction allowing a manufacturer of artificial wood logs to enjoin a competitor from using trademarked term for its logs); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) (upholding preliminary injunction against online use of virtually identical mark); *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552 (9th Cir. 1992) (upholding preliminary injunction against competitor seller of shoes falsely marked with trademarked name, designs).

     As demonstrated in the preceding section, Megola is infringing upon Plaintiffs' trademark rights by falsely claiming that Megola is authorized to manufacture and distribute the Product.   Thus, irreparable injury to Plaintiffs should be presumed. Moreover, Plaintiffs have presented actual evidence that Megola's conduct is damaging Plaintiffs by causing purchasers to question whether Plaintiffs' agent for distribution of the Product, EcoBlu, is properly authorized to act in that capacity.  (Hart Decl. ¶ 31). Such conduct threatens Plaintiffs with irreparable injury in the form of loss of control over one's reputation, goodwill, and business opportunities.  *Apple Computer, Inc*, 725 F.2d at 526 (affirming preliminary injunction after court could have reasonably concluded that continuing infringement would result in loss of control of reputation and

goodwill); *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.,* 240 F.3d 832, 841 (9th Cir. 2001) (same, including loss of prospective customers); *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (1991) ("we have also recognized that intangible injuries, such as damage to ... goodwill, qualify as irreparable harm").

Injunctive relief is particularly appropriate here because there is a significant risk that Megola will be unable to pay any significant money damages award in Plaintiffs' favor.  The Ninth Circuit has held that the insolvency of a defendant supports a finding of irreparable injury.  *In re Estate of Ferdinand Marcos, Human Rights Litigation*, 25 F.3d 1467, 1490 (9th Cir. 1994) ("We join the majority of circuits in concluding that a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant...").  Here, Megola's most recent 10-Q statement indicates that the company financial statements reflect "incurred recurring net losses of $119,953 and $201,403 in the 2011 and 2010 quarter ended respectively, and a deficit of $7,950,159 as at [sic] January 31, 2011."  (Waldbaum Decl. Ex. B at 7).  The 10-Q goes on to state that "[t]hese conditions create an uncertainty as to Megola's ability to continue as a going concern." (*Id.*)  Thus, it is unlikely that Plaintiffs' will find adequate relief in an award of monetary damages.

In summary, Plaintiffs have established that they will suffer irreparable injury if Megola's wrongdoing is not enjoined.  Accordingly, Plaintiffs' application for injunctive relief should be granted.

IV.   **THE PUBLIC INTEREST FAVORS AN INJUNCTION, BECAUSE MEGOLA'S ACTIONS MISLEAD AND ENDANGER THE BUYING PUBLIC**

Courts have long held that the public has an important interest in the proper identification of a product's origin.  *Smith v. Chanel, Inc.*, 402 F.2d 562, 566 (9th Cir. 1968) ("Preservation of the trademark as a means of identifying the trademark owner's products, implemented both by the Lanham Act and the common law, serves an important public purpose.").   Apart from identification of source, the public has an interest in "protecting trademarks generally" as well.  *Brookfield Communications, Inc.*, 174 F.3d at 1066.  Finally, the general public has a strong interest in its health.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) ("[t]he general public has an interest in the health of ... residents." (internal citations omitted)).

Here, the public interest is unmistakably served by a preliminary injunction.  First and foremost, Plaintiffs have created and maintain through trade secrets a safe, non-toxic product that is environmentally friendly.   The public has an interest in knowing any product labeled "AF21" is in fact the safe and non-toxic product created and marketed by Plaintiffs, and an interest in avoiding the health effects of potentially toxic unknown substances that Megola now advertises as "AF21."   *Smith*, 402 F.2d at 566; *Stormans, Inc.*, 586 F.3d at 1139.  On the other hand, the public is not served by refusing such an injunction and allowing Megola's misleading, falsely-labeled, and potentially hazardous substances to be sold under the guise of a safe and respected brand.

**CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant the relief requested in the accompanying Order, together with such other and further relief which this Court deems just and proper.

Dated: June 14, 2011                                   Respectfully submitted,


                                              _____/s/_____.
                                              John S. Worden, Nevada Bar # 7563
                                              SCHIFF HARDIN LLP
                                              One Market, Spear Street Tower
                                              Thirty-Second Floor
                                              San Francisco, CA  94105
                                              Tel.: (415) 901-8700
                                              Fax: (415) 901-8701
                                              jworden@schiffhardin.com

                                              _____/s/_____.
                                              Carlos Blumberg, Nevada Bar #7607
                                              BLUMBERG LAW FIRM
                                              10161 Park Run Drive, Suite #150
                                              Las Vegas, Nevada, 89144
                                              Tel.: (702) 388-0005
                                              Fax: (702) 258-0002
                                              BlumbergLaw@aol.com

                                              Maxim H. Waldbaum, *pro hac vice application
                                              to follow*
                                              Brian Neff, *pro hac vice application to follow*
                                              Henry Mann, *pro hac vice application to
                                              follow*
                                              SCHIFF HARDIN LLP
                                              666 Fifth Avenue, 17th Floor
                                              New York, NY 10103
                                              Tel.:  (212) 753-5000
                                              Fax:  (212) 753-5044
                                              mwaldbaum@schiffhardin.com
                                              bneff@schiffhardin.com
                                              hmann@schiffhardin.com

                                              *Attorneys for Plaintiffs*